AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Hampshire

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH TWO SNAPCHAT<br>ACCOUNTS THAT IS STORED AT PREMISES<br>CONTROLLED BY SNAP, INC. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.   26-mj- 154-01/02-TSM |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Central _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252A(a)(2) and<br>2252(a)(4)(B) | Receipt, distribution, and possession of child pornography. |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Tarah E. Little
*Applicant's signature*

Tarah E. Little, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: **May 29, 2026**

*Judge's signature*

City and state: Concord, New Hampshire     Talesha L. Saint-Marc, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**APPLICATIONS FOR SEARCH WARRANTS**

I, Tarah Little, a Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with the following user accounts, "admrail_aids420" ("**Target Account 1**") and racerbuggy07@gmail.com ("**Target Account 2**), together the "**Target Accounts**," that is stored at premises controlled by Snap, Inc. ("Snapchat"), which is located at 2772 Donald Douglas Loop, North Santa Monica, California, 90405. Snap, Inc. provides a mobile messaging application known as "Snapchat."

2. The information to be searched is described in the following paragraphs and in Attachment A. This request is made in support of applications for search warrants under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Snapchat to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. The government previously served preservation requests to Snapchat for **Target Account 1** and **Target Account 2.** Upon receipt of the information described in Section I of Attachment B, government-authorized personnel will review that information to locate the items described in Section II of Attachment B.

3. I have been employed as an FBI Special Agent since 2015, and am currently assigned to the Boston Field Office, Bedford Resident Agency. I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. §§ 2251, 2252A, and 2423 and I am authorized by the Attorney General to request a search warrant. While employed

by the FBI, I have investigated federal criminal violations related to high technology or cyber-crime, child exploitation, and child pornography.  I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.

4.      I am a "Federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

5.      During the course of this investigation, I have conferred with other investigators who have conducted numerous investigations and executed numerous search and arrest warrants which involved child exploitation and/or child pornography offenses.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  The facts set forth in this affidavit are based in part on my personal knowledge, information obtained during my participation in this investigation, information from others, including law enforcement officers, my review of documents and computer records related to this investigation, and information gained through my training and experience.

## STATUTORY AUTHORITY

6.      As noted above, this investigation concerns alleged violations of the following: 18 U.S.C. § 2252(a)(2) (receipt or distribution of child pornography) and 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (possession of and access with intent to view a visual depiction of a minor engaged in sexually explicit conduct) (together, the **"Target Offenses"**).

7.      18 U.S.C. § 2252(a)(2) makes it unlawful for any person to knowingly receive or distribute any visual depiction using any means or facility of interstate or foreign commerce, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

8.      18 U.S.C. § 2252(a)(4)(B) prohibits any person from knowingly possessing or accessing with the intent to view, or attempting or conspiring to possess or access with the intent to view, one or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

9.      I submit that the facts set forth in this affidavit establish probable cause to believe that violations of the Target Offenses have been committed and that there is probable cause to believe that fruits, evidence, and instrumentalities of the Target Offenses are likely to be found in Attachment A, as set forth below.

## JURISDICTION

10.      This Court has jurisdiction to issue the requested warrants because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND CONCERNING SNAPCHAT

3

11.     Snap, the owner of Snapchat, is a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510.  Specifically, Snapchat is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Snapchat accounts like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Snapchat users.

12.     Snap collects basic contact and personal identifying information from users during the Snapchat registration process.  This may include an email address and/or a mobile phone number.

13.     Snap also collects and retains information about how each user accesses and uses Snapchat.  This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

14.     Each Snapchat account is identified by a username.  A Snapchat username is a unique identifier associated with a specific Snapchat account, and it cannot be changed by the user.

15.     Snapchat offers four primary ways for users to communicate with each other.

   a.  <u>Snaps.</u>  A user takes a photo or video using their camera phone in real-time. The user then selects a time limit of 1-10 seconds for the receiver to view the photo or video. A user can elect to have the photo/video saved in their phone's photo gallery or just sent via Snapchat, without being saved. The photo/video can then be sent to a friend in Snapchat.  The snap is deleted after the selected amount of time.  If a recipient attempts to take a screenshot of the snap to save on his/her phone, the

application will notify the sender of this behavior.  Snapchat states that it deletes each snap from its servers once all recipients have viewed it.  If a snap has not been viewed by all recipients, Snapchat states that it retains the snap for thirty days.

b. <u>Memories</u>.  Memories is Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. A user can also edit and send Snaps and create Stories from these Memories.  Snaps, Stories, and other photos and videos saved in Memories are backed up by Snapchat and may remain in Memories until deleted by the user.

c. <u>Stories</u>.  A user can also add the photo/video Snap to their "Story." Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours.  Stories can also be saved in Memories.

d. <u>Chat</u>.   A user can also type messages to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by both parties – and both parties swipe away from the Chat screen – the message will be cleared.  Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message (text or photo) that he or she wants to keep. The user can clear the message by tapping it again.

16.    Snapchat also obtains a variety of non-content information from its users. For example:

a. <u>Usage Information</u>.  Snapchat may collect information about how users interact with its services, including which search queries they submit, and how they communicate with other users, including maintaining a log of all snaps to and from

an account for the last 31 days, for 24 hours of posted Stories, and for any unopened Chats or those saved by a sender or recipient, and how a user interacts with these messages (such as when a user opens a message).

b. <u>Device Information</u>.  Snapchat collects information about the devices of its users, including information about the user's hardware and software, such as the hardware model, operating system version, device memory, advertising identifiers, unique application identifiers, apps installed, unique device identifiers, browser type, language, battery level, and time zone; information from device sensors, such as accelerometers, gyroscopes, compasses, microphones, and whether the user has headphones connected; and information about the user's wireless and mobile network connections, such as mobile phone number, service provider, and signal strength.

c. <u>Device Phonebook</u>.  Snapchat may collect information about the phonebook of the user's device.

d. <u>Cameras and Photos</u>.  Snapchat may collect images and other information from the user's device's camera and photos.

e. <u>Location Information</u>.  Snapchat may collect information about the user's location, including precise location using methods that include GPS, wireless networks, cell towers, Wi-Fi access points, and other device sensors, such as gyroscopes, accelerometers, and compasses.

f. <u>Snap Map</u>.  Snapchat allows a user to share location information with his/her friends and also obtain location information about the user's friends.  Based on such information, Snapchat places the friends' locations on a map viewable to the user.,

g. Information Collected by Cookies and Other Technologies. Snapchat may collect information through cookies and other technologies about the user's activity, browser, and device.

h. Log Information. Snapchat collects log information when a user uses Snapchat's website, including device information, access times, pages viewed, IP address, and pages visited.

17. In my training and experience, evidence of who was using the Snapchat account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. For example, the stored communications and files connected to a Snapchat account may provide direct evidence of the offenses under investigation. Based on my training and experience, Snapchat accounts are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

18. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Snap can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or owned the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier

7

information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

19. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

20. Therefore, Snap's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Snapchat. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

**DEFINITIONS**

21. "Chat" refers to any kind of communication over the Internet that offers a real-time transmission of text messages from sender to receiver. Chat messages are generally short, in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

22. "Child pornography" includes any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct where: (A) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (B) the visual depiction was a digital image, computer image, or computer-generated

8

image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (C) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.  18 U.S.C. § 2256(8).

23. "Child Erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, legally obscene or that do not necessarily depict minors in sexually explicit conduct.

24. "Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1) as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."  These devices include but are not limited to any data-processing hardware (such as central processing units, memory typewriters, mobile "smart" telephones, tablets, and self-contained "laptop" or "notebook" computers).

25. "Computer Server" or "Server," as used herein, is a computer that is attached to a dedicated network and serves many users.  A web server, for example, is a computer which hosts the data associated with a website.  That web server receives requests from a user and delivers information from the server to the user's computer via the Internet.  A domain name system ("DNS") server, in essence, is a computer on the Internet that routes communications when a user types a domain name, such as www.cnn.com, into his or her web browser.  Essentially, the domain name must be translated into an Internet Protocol ("IP") address so the computer hosting the web site may be located, and the DNS server provides this function.

26. "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic,

9

magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

27.     "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work.  Computer software is stored in electronic, magnetic, or other digital form.  It commonly includes programs to run operating systems, applications, and utilities.

28.     "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

29.     "Computer passwords, pass-phrases and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password or pass-phrase (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable,

as well as reverse the progress to restore it.

30.     The "Internet" is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

31.     "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.  ISPs can offer a range of options in providing access to the Internet including telephone based dial-up, broadband based access via digital subscriber line ("DSL") or cable television, dedicated circuits, or satellite based subscription.  ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, which the connection supports.  Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber.  By using a computer equipped with a modem, the subscriber can establish communication with an Internet Service Provider ("ISP") over a telephone line, through a cable system or via satellite, and can access the Internet by using his or her account name and personal password.

32.     "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.  IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet.  IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.  IP addresses are also used by computer servers,

11

including web servers, to communicate with other computers.

33. "URL" is an abbreviation for Uniform Resource Locator and is another name for a web address. URLs are made of letters, numbers, and other symbols in a standard form. People use them on computers by clicking a pre-prepared link or typing or copying and pasting one into a web browser to make the computer fetch and show some specific resource (usually a web page) from another computer (web server) on the Internet.

34. "Minor" means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

35. The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks ("DVDs"), Personal Digital Assistants ("PDAs"), Multi Media Cards ("MMCs"), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

36. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. *See* 18 U.S.C. § 2256(2).

37.    "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  See 18 U.S.C. § 2256(5).

## PROBABLE CAUSE

38.    On February 12, 2025, an online undercover officer ("**UC**") from Ohio's Huron County Sheriff's Office portraying themself as a 13-year-old female began talking with a male named "Rob" with the Snapchat username "oldrdad418andup".

39.    A colleague of the UC then made an additional account portraying to be a 12-year-old female cousin of the 13-year-old (collectively the "UCs").

40.    During these conversations "Rob' asked the UC multiple times to send child sexually explicit material to him as well as directed her to perform sexually explicit acts on herself and her cousin.

41.    "Rob" also sent the UC a video of what appeared to be a minor female approximately 13 years-old with an adult male inserting his penis inside her. The following conversation then ensued:

> **UC:** is that you
>
> **ROB:** no did you watch it all
>
> **UC:** ya does it hurt
>
> **ROB:** no
>
> **UC:** how is that girl
>
> **ROB:** 15 then send 17 sorry
>
> **UC:** she looks almost my age
>
> **ROB:** are you wet.

13

42.    Records obtained from Snapchat provided the following subscriber information

for "Rob":

> Username: oldrdad4l8andup
> Old Username: oldrdad4younger
> Email: biatchboss420@gmail.com
> Created: Tue Oct 15 00:43:27 UTC 2024
> Creation IP: 172.56.193.23 1
> Phone Number: 19784195985
> Display Name: Rob

43.    Records obtained from TextNow provided the subscriber information for (978)

419-5985 as the following:

> Name: Robert Lemoyne
> Email: bossbiatch420@gmail.com

44.    Further investigation revealed that a ROBERT LEMOYNE, whose date of birth

matched other information gathered during the investigation, resided in Hudson, New

Hampshire. Law enforcement compared photographs of LEMOYNE to photos shared by the user

of the "Rob" account and observed that they appeared to be the same person.

45.    On January 5, 2026, Hudson New Hampshire Police Department ("HPD")

interviewed LEMOYNE at his home.  During the interview LEMOYNE confirmed to HPD that

he previously utilized the "Rob" account on Snapchat. LEMOYNE also disclosed that his current

phone number was (603) 506-8138.

46.    HPD seized LEMOYNE's cell phone and applied for a search warrant for the

phone. During a cursory search of the phone the Snapchat application was located and was

observed as recently being utilized.

47.    On February 3, 2026, Snapchat confirmed the phone number (603) 506-8138 was

associated with an active Snapchat account.

14

48.     A review of LEMOYNE's phone showed that he sent multiple sexually explicit pictures and videos, including CSAM, to numerous minor victims.

49.     On April 24, 2026, a Child Adolescent Forensic Interview (CAFI) was conducted with one of LEMOYNE's minor victims, who had been identified through the review of LEMOYNE's phone. During the interview she stated his current cell phone number was (603) 202-1347 and that LEMOYNE had texted the victim as recently as the morning of the CAFI. Agents verified that the minor victim first began receiving communications from the -1347 phone number on November 24, 2025.

50.     On May 20, 2026, a federal Grand Jury returned an indictment charging LEMOYNE with two counts of 18 U.S.C. § 2251(a), child exploitation, one count of 18 U.S.C. § 2252 A(a)(2) & (b)(1), distribution of child pornography and one count of 18 U.S.C. § 2252 a(5)(B) & (b)(2), possession of access with intent with intent to view child pornography.

51.     On May 21, 2026, LEMOYNE was placed under arrest on a warrant issued with the Indictment. During the arrest, a grey Samsung phone was located in LEMOYNE's front shirt pocket.

52.     On May 22, 2026, a federal search warrant was issued by this Court (26-mj-149-01-TSM) for LEMOYNE's grey Samsung phone.

53.     On May 27, 2026, during a search of the grey Samsung cell phone it was determined the SnapChat application was installed on the phone and the **Target Accounts** were the usernames and emails associated with LEMOYNE's accounts. Investigators observed information for **Target Account 1** under device data located on the phone. Inside the saved passwords device data, investigators observed information for **Target Account 2**. This

15

information indicated that the phone user had previously logged into the **Target Accounts** on the device.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO COLLECT, RECEIVE OR DISTRIBUTE CHILD PORNOGRAPHY

54. Based on my previous investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals with intent to view and/or possess, collect, receive, or distribute images of child pornography:

55. Individuals who view and/or possess, collect, receive, or distribute child pornography may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

56. Individuals who view and/or possess, collect, receive, or distribute child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings, or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, individuals who view and/or possess, collect, receive, or distribute child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings, or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of

16

children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

57.     Individuals who view and/or possess, collect, receive, or distribute child pornography almost always possess and maintain their "hard copies" of child pornographic material, that is, their films, videotapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain photos, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

58.     Likewise, individuals who view and/or possess, collect, receive, or distribute pornography often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence or inside the collector's vehicle, to enable the individual to view the collection, which is valued highly.

59.     Individuals who view and/or possess, collect, receive, or distribute child pornography also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

60.     Individuals who would have knowledge about how to access online forums, such as bulletin boards, newsgroups, Internet relay chat or chat rooms are considered more advanced

users and therefore more experienced in acquiring and storing a collection of child pornography images.

61.     Individuals who view and/or possess, collect, receive, or distribute child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

62.     Child pornography can be transferred via electronic mail or through file transfer protocols (FTPs) to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (*i.e.*, "Instant Messaging"), and easy access to the Internet, the computer is a preferred method of distribution and receipt of child pornographic materials.

63.     The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

## CONCLUSION

64.     Based on the aforementioned factual information, there is probable cause to believe that evidence, fruits, and instrumentalities of the crimes of receipt or distribution of child pornography in violation of   18 U.S.C. § 2252A(a)(2) and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) may be found in the Snapchat account described in Attachment A.  I therefore seek a warrant to search the Snapchat accounts described in Attachment A and to seize the items described in Attachment B.   Based on the forgoing, I request that the Court issue the proposed search warrant.  Because the warrant will be served on Snapchat, which will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

*/s/ Tarah E. Little*
Tarah E. Little
Special Agent
Federal Bureau of Investigation

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: **May 29, 2026**
Time: **10:03 AM**

_____
The Honorable  Talesha L. Saint-Marc
United States Magistrate Judge

19

**ATTACHMENT A**

**PROPERTY TO BE SEARCHED**

Information associated with the Snap, Inc. ("Snapchat") account having the username "admrail_aids420" ("**Target Account 1**") and "racerbuggy07@gmail.com" (**"Target Account 2"**) (together, the **"Target Accounts"**),  as well as information preserved from those accounts preserved on May 22, 2026 (preservation # 8e6c8346dd), pursuant to a request made under 18 U.S.C. § 2703(f), which is stored at premises owned, maintained, controlled, or operated by Snap, Inc., located at 2772 Donald Douglas Loop, North Santa Monica, California 90405.

**ATTACHMENT B**

**I. Information to be disclosed by Snap, Inc. ("Snapchat" or "the Provider")**

1.      To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, including any records, files, logs, photographs, videos or other information that has been deleted but is still available to the Provider, or has been confirmed preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for the account listed in Attachment A from **November 24, 2025, to the present**, including:

   a.  All subscriber information, including: Snapchat username; email addresses; phone numbers; full name; physical address; and other identifiers.

   b.  All information pertaining to creation of the account, including: date and time of creation; IP address used to create the account; all subscriber information provided at the time the account was created.

   c.  Timestamp and IP address of all account logins and logouts;

   d.  Logs of all messages and Snaps sent and received, including all meta-data about the messages and Snaps and all information regarding the dates and times the messages and Snaps were sent or received; and

   e.  The content of all messages and Snaps sent and received to include stories, memories, chats, and location data.

**II. Information to be seized by the government**

1.      All information described above in Section I, which constitutes evidence of violations of 18 U.S.C. §§ 2252A(a)(2) and 2252(a)(4)(B).

2

2.      All information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of 18 U.S.C. § 2252A(a)(2) and 252(a)(4)(B), whose violations involving the accounts listed in Attachment A from **November 24, 2025, to the present**, to include information pertaining to the following matters:

a.  Evidence including documents, photographs or videos that contain any child pornography, including the visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct.

b.  Evidence of the disposal or destruction of images and videos that constitute child pornography as defined by 18 U.S.C. § 2256, i.e., visual depictions of minors engaging in sexually explicit conduct;

c.  Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the email account owner;

d.  Evidence indicating the Account owner's state of mind as it relates to the crimes under investigation;

e.  The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

f.  The identity of the person(s) who communicated with the account about matters relating to the crimes under investigation, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support

3

staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.